**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **EARL KENNON**<br>c/o The Becker Law Firm<br>1111 Superior Avenue East, Suite 400<br>Cleveland, Ohio 44114 | ) |
| Plaintiff, | ) **Case No. 2:25-cv-204** |
| -vs- | ) **The Honorable James L. Graham** |
| **DEPCOM POWER, INC.**<br>c/o Registered Agent<br>United Agent Group Inc.<br>119 E. Court Steet<br>Cincinnati, Ohio 45202 | ) |
| *and* | ) |
| **VERMEER MANUFACTURING COMPANY d/b/a Vermeer Corporation**<br>c/o Registered Agent<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219 | ) |
| *and* | ) |
| **UNITED RENTALS, INC.**<br>100 First Stamford Place, Suite 700<br>Stamford, Connecticut 06902 | ) |
| *and* | ) |
| **UNITED RENTALS (NORTH AMERICA), INC.**<br>100 First Stamford Place, Suite 700<br>Stamford, Connecticut 06902<br>c/o Registered Agent<br>Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215 | ) |
| *and* | ) |

**ATLANTA FARMS SOLAR PROJECT, LLC**
c/o Registered Agent
CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

Defendants.

## PLAINTIFF'S SECOND AMENDED COMPLAINT

### Introductory Allegations

1. Plaintiff is a resident of Pearland, Brazoria County, Texas.

2. Defendant DEPCOM Power, Inc., ("*DEPCOM*") is a foreign corporation operating under and by virtue of the State of Ohio through its design, development, engineering, procurement, construction, management, and/or maintenance of power projects throughout Ohio, specifically including, but not limited to the Atlanta Farms Solar Project site at 11524 US-22, Williamsport, Pickaway County, Ohio.

3. At all relevant times, DEPCOM acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

4. Defendant Vermeer Manufacturing Company d/b/a Vermeer Corporation ("*Vermeer*") is a foreign corporation operating under and by virtue of the State of Ohio with places of business located throughout Ohio, specifically including, but not limited to Butler County, Ohio;

Hancock County, Ohio; Fayette County, Ohio; and Medina County, Ohio.

5. At all relevant times, Vermeer acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

6. Defendant Atlanta Farms Solar Project, LLC ("*Atlanta Farms*") is a foreign limited liability company operating under and by virtue of the State of Ohio through its design, development, engineering, procurement, construction, management, and/or maintenance of power projects throughout Ohio, specifically including, but not limited to the Atlanta Farms Solar Project site at 11524 US-22, Williamsport, Pickaway County, Ohio.

7. At all relevant times, Atlanta Farms acted by and through its respective agents, servants, workmen and employees, who were acting within the scope of their authority and employment.

8. Venue in this Court is proper in this Court, pursuant to 28 U.S. Code § 1391 (b)(2), because this judicial district is where the Defendants conducted activity that gave rise to the claim for relief and where all or part of the claim for relief arose.

**Facts**

9. All of the allegations that follow are made upon information and belief.

10. Prior to March 23, 2023, Vermeer designed, manufactured, marketed, and sold the Vermeer PD10 pile diver (the "*Subject Pile Driver*") at issue in this matter. Vermeer sold the Subject Pile Driver to one of DEPCOM for use on a solar farm worksite. DEPCOM subsequently supplied the Subject Pile Driver to Plaintiff.

11. The Subject Pile Driver is a heavy piece of machinery used in construction to drive piles deep into the ground to support solar panels on solar farms.

12. Prior to March 23, 2023, DEPCOM, Atlanta Farms, designed, developed,

engineered, procured, constructed, operationally managed, controlled, inspected, surveyed, and maintained the Atlanta Farms Solar Project construction site at 11524 US-22, Williamsport, Ohio (the "*Worksite*").

13. The Atlanta Farms Solar Project is a 200-megawatt solar facility located at 11524 US-22, Williamsport, Pickaway County, Ohio.

14. At all relevant times, DEPCOM, Atlanta Farms, maintained operational control over the means and methods of work performed at the Worksite, including the work being performed at the time of the underlying incident.

15. At all relevant times, DEPCOM and Atlanta Farms also maintained authority and control over the safety of the Worksite. DEPCOM and Atlanta Farms disregarded the safety of workers at the Worksite, including Mr. Kennon, by allowing and instructing work to be done with the use of unsafe equipment and without proper training.

16. Prior to March 23, 2023, DEPCOM supplied the Subject Pile Driver for use at the Worksite.

17. DEPCOM is in the business of supplying pile drivers for use at worksites. DEPCOM supplied Ridgeline with the Subject Pile Driver.

18. The Subject Pile Driver was being used at the Worksite to drive piles into the ground to support the solar panel structures.

19. Prior to March 23, 2023, DEPCOM, Vermeer, and Atlanta Farms owned, operated, controlled, inspected, serviced, maintained, and repaired the Subject Pile Driver and the associated equipment.

20. At all relevant times, DEPCOM, Vermeer, and Atlanta Farms were responsible for inspecting, maintaining, servicing, and repairing all machinery used by Plaintiff and other

Ridgeline employes in the construction of solar panels at the Worksite, including the Subject Pile Driver involved in the underlying incident.

21. Prior to March 23, 2023, Ridgeline Energy Analytics, Inc. ("*Ridgeline*") contracted with DEPCOM for work on the Atlanta Farms Solar Project.

22. Vermeer represented the Subject Pile Driver to have a "an operator present switch in the seat" that cuts off the machine's functions within three seconds of the operator exiting the seat ("*Seat Sensor*") such that "if you move from the seat while operating the machine, the function will stop within three second and the operator presence light will go out. You must return all controls to neutral before any function can resume." *Id*. Vermeer, Pile Driver Operation and Safety, Starting and Shutting Down (Mar. 14, 2025), https://www.youtube.com/watch?v=HSRvZV9ezo4. Vermeer included this Seat Sensor system in seated pile drivers as a material safety component for operator safety. *Id*.

23. The Subject Pile Driver's Seat Sensor system failed to meet the three second termination of function after an operator left the seat, thereby lacking a crucial safety component resulting in the Subject Pile Driver's ability to continue operating despite the operator not being present in the seated operator's station, creating a hazardous condition for workers required to work with or near the Subject Pile Driver. Moreover, upon information and belief, there was no warning regarding the three second delay in the operator's manual of the Subject Pile Driver.

24. Vermeer failed to adequately and properly warn that the Subject Pile Driver would continue operating when the operator had left the seated operator's station, that the hammer of the Subject Pile Driver would drop without operator activation, and when the crush hazard was present, rendering the Subject Pile Driver unreasonably dangerous.

25. On March 23, 2023, Mr. Kennon, was working at the Worksite as a machine

operator employed by Ridgeline. Mr. Kennon was sitting in the seated operator's station of the Subject Pile Driver, operating the machine to drive piles at the Worksite along with two other Ridgeline employees.

26. DEPCOM was aware that the Subject Pile Driver at the Worksite was defective and malfunctioning but failed to adequately inspect, service, maintain, and repair the machine and/or remove the machine from use.

27. Mr. Kennon ceased operations of the Subject Pile Driver, exited the seated operator's station on the machine, climbed down from the machine, and was standing near the hammer portion of the Subject Pile Driver when suddenly, and without warning, the Subject Pile Driver's hammer dropped, causing the hammer's head to come down violently, striking Mr. Kennon on his head and neck area, crushing him, and causing catastrophic injuries.

**Count One**

28. Plaintiff adopts and incorporates herein by reference all claims, counts, allegations and averments contained in the Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

29. Vermeer, designed, manufactured, marketed, and/or sold the Subject Pile Driver that injured Mr. Kennon.

30. Under the Ohio Product Liability Act ("***OPLA***"), a manufacturer is subject to liability for compensatory damages based on a product liability claim if a defect existed in product manufactured and/or sold by the defendant at the time the product left the hands of the defendant and was the proximate cause of the injury. Ohio Rev. Code § 2307.73.

31. Under OPLA, a product can be considered defective in one of four ways: (1) manufacture or construction, (2) design or formulation, (3) inadequate warning or instruction, and

(4) failure to conform to a representation made by its manufacturer. *Id*.

***Manufacture and/or Construction Defect***

32. A product is defective in manufacture or construction if, "when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." Ohio Rev. Code § 2307.74.

33. When it left Vermeer's control, the Subject Pile Driver deviated in a material way from Vermeer's design specifications, performance standards, and otherwise identical units manufactured to the same design specifications, and/or from otherwise identical units manufactured to the same performance standards. The design specifications and performance standards for Vermeer's pile drivers equipped with a seated operator's station—such as the Subject Pile Driver—require an "an operator present switch in the seat" that cuts off the machine's functions within three seconds of the operator exiting the seat ("*Seat Sensor*"). Vermeer, Pile Driver Operation and Safety, Starting and Shutting Down (Mar. 14, 2025), https://www.youtube.com/watch?v=HSRvZV9ezo4. Specifically, Vermeer's design specifications and performance standards for seated pile drivers are such that "if you move from the seat while operating the machine, the function will stop within three second and the operator presence light will go out. You must return all controls to neutral before any function can resume." *Id*. Vermeer included this Seat Sensor system in seated pile drivers as a material safety component for operator safety. *Id*.

34. When the Subject Pile Driver left Vermeer's control, the Subject Pile Driver's Seat Sensor system deviated from the three second termination of function after an operator left the seat, thereby materially altering the Subject Pile Driver's crucial safety component and thus

deviated in a material way from Vermeer's design specifications, performance standards, otherwise identical units manufactured to the same design specifications, and/or from otherwise identical units manufactured to the same performance standards.

35. The Subject Pile Driver's Seat Sensor system's deviation from the three second termination of function after an operator left the seat existed at the time the Subject Pile Driver left the hands of Vermeer.

36. On the date of incident, Mr. Kennon ceased operations of the Subject Pile Driver, exited the seated operator's station on the machine, climbed down from the machine, and was standing near the hammer portion of the Subject Pile Driver when suddenly, and without warning, the Subject Pile Driver's hammer dropped, causing the hammer's head to come down violently—more than three seconds after Mr. Kennon exited the operator's seat. The Subject Pile Driver's deviation from the three second termination of function after an operator left the seat directly resulted in the hammer falling and striking Mr. Kennon, causing Mr. Kennon's injuries.

37. Thus, the Subject Pile Driver was defective in its material deviation from Vermeer's design specifications, performance standards, otherwise identical units manufactured to the same design specifications, and/or from otherwise identical units manufactured to the same performance standards. This deviation proximately caused Mr. Kennon's injuries. Thus, Vermeer is liable for compensatory damages under OPLA Section 2307.74.

***Failure to Conform to Representation Made***

38. Under OPLA, "a product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacture," even if "its manufacturer did not act fraudulently, recklessly, or negligently in making the representation." Ohio Rev. Code § 2307.77.

39. Vermeer represented its seated pile drivers—including the Subject Pile Driver—as possessing "an operator present switch in the seat" so that "if you move from the seat while operating the machine, the function will stop within three second and the operator presence light will go out. You must return all controls to neutral before any function can resume." *Id*.

40. On the date of incident, the Subject Pile Driver continued to function more than three seconds after Mr. Kennon exited the seated operator's seat. Thus, the Subject Pile Driver failed to conform to the Seat Sensor representations made by Vermeer when it left Vermeer's control.

41. The Subject Pile Driver's Seat Sensor system's failed to conform to the three second cutoff representation at the time the Subject Pile Driver left the hands of Vermeer.

42. Mr. Kennon relied on Vermeer's representation by leaving the operator's seat, climbing down the machine, and standing next to the hammer of the machine. His reliance was a direct and proximate cause of the incident because he otherwise would not have stood next to the hammer of the machine if he had known it would fall after leaving the operator's for more than three seconds.

43. The Subject Pile Driver's failure to conform to Vermeer's representations of the Seat Sensor directly resulted in the machine continuing to function more than three seconds after the operator left the operator's seat. As a result of continued function beyond the three seconds, the Subject Pile Driver's hammer fell, striking Mr. Kennon and causing Mr. Kennon's injuries.

44. Thus, the Subject Pile Driver was defective in its failure to conform to Vermeer's representations of the Subject Pile driver. This defect proximately caused Mr. Kennon's injuries. Thus, Vermeer is liable for compensatory damages under OPLA Section 2307.77.

***Warning and/or Instruction Defect***

45. Under OPLA, a product is defective due to inadequate warning or instruction at the time of marketing if, when it left control of the manufacturer, "(a) the manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; and (b) the manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm." Ohio Rev. Code § 2307.76.

46. When the machine left Vermeer's control, Vermeer knew, or in the exercise of reasonable care, should have known about (*1.*) the dangers associated with using the Subject Pile Driver; (*2.*) the significant risks of serious bodily harm and/or death if the Subject Pile Driver is misused and/or improperly inspected, serviced, maintained, and/or repaired; and (*3.*) the significant risks of serious bodily harm and/or death that may result from walking around and/or underneath the Subject Pile Driver. Vermeer's knowledge of the risk and/or dangers posed by the Subject Pile Driver are evidenced by Vermeer's marketing and operational materials' repeated warnings to stay away from the pile driver while in operation.

47. Given the likelihood that the Subject Pile Driver would inflict a crush hazard, such as was the case with Mr. Kennon, a manufacturer exercising reasonable care would have provided warning and/or instruction regarding about (*1.*) the dangers associated with using the Subject Pile Driver; (*2.*) the significant risks of serious bodily harm and/or death if the Subject Pile Driver is misused and/or improperly inspected, serviced, maintained, and/or repaired; and (*3.*) the significant risks of serious bodily harm and/or death that may result from walking around and/or underneath the Subject Pile Driver.

48. Despite knowing about the risks associated with the crush hazard posed by the Subject Pile Driver and the likelihood of harm, Vermeer failed to provide adequate and proper warning and/or or instruction regarding the dangers and proper use of the Subject Pile Driver when it left Vermeer's control, including but not limited to failing to warn that the machine would continue to operate when the operator had left the driver's seat and failing to warn when the crush hazard was present. Alternatively, Vermeer failed to give adequate and proper warnings and instructions when the Subject Pile Driver left its control that the Subject Pile Driver may continue to operate despite the operator not being seated in the operator seat. Thus, the Subject Pile Driver lacked adequate warnings and/or instruction.

49. Thus, the Subject Pile Driver was defective due to inadequate warning or instruction. The Subject Pile Driver lacked adequate warnings and/or instruction at the time the Subject Pile Driver left the hands of Vermeer. Such failures rendered the Subject Pile Driver defective and unreasonably dangerous and proximately caused the underlying occurrence and Mr. Kennon's injuries. Thus, Vermeer is liable for compensatory damages under OPLA Section 2307.76.

***Design and/or Formulation Defect***

50. Under OPLA, "a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation . . . ." Ohio Rev. Code § 2307.75(A).

51. "The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following: (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the

intended and reasonably foreseeable uses, modifications, or alterations of the product; (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm; (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product; (4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer; (5) The extent to which that design or formulation is more dangerous than a resonably [sic] prudent consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* § 2307.75(B).

52. "The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following: (1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation; (2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation; (3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation." *Id.* § 2307.75(C).

53. When the Subject Pile Driver left Vermeer's control, Vermeer's design of the Subject Pile Driver included harmful characteristics and/or consequences of its design that outweighed the benefits of the design and were not observable by Mr. Kennon, which rendered the Subject Pile Driver defective, unreasonably dangerous, and proximately caused the underlying occurrence and Mr. Kennon's resulting damages. The harmful characteristics include, but are not limited to, defective design of the operator presence switch triggered when an operator is not seated in the seated operator's station of the Subject Pile Driver. The operator presence switch was designed in a manner that caused it to malfunction and fail in the course of ordinary use.

54. When the Subject Pile Driver left Vermeer's control, Vermeer's design failed to incorporate available and feasible safety technology to identify a person in the path of travel of the hammer, including but not limited to camera, radar, infrared-based sensors. The failure to incorporate such technology gave rise to a substantial degree of risk of injury to individuals in the path of the hammer which outweighed the benefits of the design, considering the foreseeable use of the machine, the foreseeable presence and awareness of operators and workers, and public and private standards that were in effect at the time the product left Vermeer's control. Incorporation of sensor technology was feasible to incorporate into the design of the machine, would not have impaired any functionality of the machine, and would have reduced or eliminated the substantial risk of injuries caused by being struck by the hammer of the machine, and would have prevented or reduced the risk of Mr. Kennon's injury,

55. When the Subject Pile Driver left Vermeer's control, Vermeer's design failed to incorporate available and feasible safety technology to effectively power down the machine, including but not limited to a secondary shutoff switch on the machine's exterior. The failure to incorporate such technology gave rise to a substantial degree of risk to individuals working in the area around the machine which outweighed the benefits of the design, considering the foreseeable use of the machine, the foreseeable presence and awareness of operators and workers, and public and private standards that were in effect at the time the product left Vermeer's control. Incorporation of a secondary shutoff switch was feasible to incorporate into the design of the machine, would not have impaired any functionality of the machine, would have reduced or eliminated the substantial risk of injuries caused by operation of the machine, and would have prevented or reduced the risk of Mr. Kennon's injury.

56. Thus, the Subject Pile Driver was defective due to a defect in the design or

formulation of the machine. The foreseeable risks of the Subject Pile Driver exceeded the benefits of its design at the time the Subject Pile Driver left the hands of Vermeer. Such failures rendered the Subject Pile Driver defective and unreasonably dangerous and proximately caused the underlying occurrence and Mr. Kennon's injuries. Thus, Vermeer is liable for compensatory damages under OPLA Section 2307.76.

57. Vermeer is liable for defects in the manufacturing, marketing, selling, distributing, and/or supplying the Subject Pile Driver. As a direct and proximate result of the defects, Mr. Kennon suffered and sustained severe, debilitating personal injury and bodily damage; endured considerable physical pain and suffering, and mental and emotional anguish; incurred significant medical and hospital and related expenses; lost wages, earning capacity, and suffered other economic and non-economic injuries, all of which the above named Defendant is liable for.

58. As a further direct and proximate result of the defects, Mr. Kennon required and continues to require medical care and treatment for which Mr. Kennon has incurred and will continue to incur expenses for the evaluation, diagnosis, care and treatment of his injuries, all of which the above-named Defendant is liable for.

59. As a further direct and proximate result of the defects er, Mr. Kennon suffered and will continue to suffer a loss of income and earning potential and capacity into the future, all of which the above-named Defendant is liable for.

60. As a further direct and proximate result of the defects, Mr. Kennon will continue to suffer extreme pain and mental anguish, and he will continue to incur medical expenses as a direct consequence thereof.

61. The aforesaid defects demonstrate a conscious, reckless and/or flagrant disregard for the rights and safety of another person, including Mr. Kennon, which has a great probability of

causing substantial harm, thereby also entitling Mr. Kennon to an award of punitive damages.

**Count Two**

62. Plaintiff adopts and incorporates herein by reference all claims, counts, allegations and averments contained in the Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

63. Defendants DEPCOM and Atlanta Farms retained and exercised control over the worksite, over Mr. Kennon's work activities, over critical variables in the workplace, and/or over the work activities that caused Mr. Kennon's injuries. As such, employees, representatives, and/or agents of DEPCOM and Atlanta Farms owed a duty of reasonable care to Mr. Kennon.

64. On March 23, 2023, DEPCOM and Atlanta Farms were negligent and breached the duty of care they owed to Mr. Kennon by allowing dangerous conditions to exist at the Worksite, including but not limited to:

a. Failing to provide adequately functional equipment on the Worksite;

b. Failing to adequately maintain instrumentalities used on the Worksite;

c. Failing to adequately train workers on the worksite on pile driver operation;

d. Failing to provide proper instrumentalities at the Worksite to perform occupational activities safely;

e. Failing to properly train their employees in the techniques of adequately inspecting the safety of Worksite instrumentalities;

f. Failing to properly train their employees in the techniques of adequately maintaining Worksite instrumentalities;

g. Failing to properly train their employees in the techniques of adequately supervising and ensuring the safety of the Worksite;

h. Failing to develop and implement proper safety protocols for the individuals engaged in Worksite operations;

i. Failing to enforce any existent precautionary measures and safety protocols regarding Worksite operations;

j. Failing to develop and implement proper safety protocols for inspecting Worksite instrumentalities;

k. Failing to enforce any existent precautionary measures and safety protocols for inspecting Worksite instrumentalities;

l. Failing to develop and implement proper safety protocols for maintaining, servicing, and/or repairing Worksite instrumentalities;

m. Failing to enforce any existent precautionary measures and safety protocols for maintaining, servicing, and/or repairing Worksite instrumentalities;

n. Failing to develop and implement proper safety protocols for reporting any dangerous condition found at the Worksite;

o. Failing to enforce any existent precautionary measures and safety protocols for reporting any dangerous condition found at the Worksite;

p. Failing to develop and implement proper safety protocols for fixing and/or repairing any dangerous condition found at the Worksite;

q. Failing to enforce any existent precautionary measures and safety protocols for fixing and/or repairing any dangerous condition found at the Worksite;

r. Failing to provide a reasonably safe workplace;

s. Failing to develop and implement proper workplace safety protocol;

t. Failing to properly and adequately inspect for any dangerous condition on the Worksite;

u. Failing to make safe any dangerous condition on the Worksite;

v. Failing to properly and adequately warn of any hazardous conditions on the Worksite;

w. Failing to properly and adequately warn of improperly maintained instrumentalities on the Worksite;

x. Failing to make the Worksite reasonably safe;

y. Failing to make instrumentalities on the Worksite reasonably safe;

z. Failing to take remedial action for known hazards;

aa. Failing to remove hazardous conditions from the Worksite;

bb. Failing to properly and adequately service, inspect, maintain, and/or repair the Subject Pile Driver;

cc. Failing to ensure that the Subject Pile Driver was reasonably safe for operation;

dd. Failing to properly and adequately communicate the hazards of the Subject Pile Driver;

ee. Failing to properly and adequately warn of the dangerous condition of the Subject Pile Driver;

ff. Disregarding an extreme risk of harm by failing to adequately inspect the Subject Pile Driver for hazardous conditions;

gg. Disregarding the safety of bystanders in the vicinity of the Subject Pile Driver; and

hh. Other acts and/or omissions deemed negligent by the jury.

65. On March 23, 2023, DEPCOM and Atlanta Farms were negligent and breached the duty of care it owed to Mr. Kennon by exposing him to extremely and unreasonably dangerous processes, procedures, and/or conditions including, without limitations, one or more of those conditions set forth in the preceding paragraph.

66. As a result of the aforesaid actions, failures, and/or negligence of the employees, representatives, or agents of DEPCOM, Atlanta Farms, , Mr. Kennon suffered the serious and permanent injuries set forth in Count One.

67. DEPCOM and Atlanta Farms are individually and/or jointly and severally liable for Mr. Kennon's injuries and damages.

**Count Three**

68. Plaintiff adopts and incorporates herein by reference all claims, counts, allegations and averments contained in the Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

69. Plaintiff believes and therefore states that DEPCOM and Atlanta Farms committed one or more acts with the intent to injure another and/or with the belief that injury was substantially certain to occur and that as a direct and proximate result of DEPCOM and Atlanta Farms's conduct or omissions, Mr. Kennon suffered the injuries, harms and losses and damages as more fully described in Count One.

70. Before Mr. Kennon was injured, DEPCOM and Atlanta Farms by and through its owners/members, managers, supervisors, foremen, trainer(s), agent(s) and/or other personnel who had the right to direct and control Mr. Kennon's work knew:

a. Operating near defective and/or malfunctioning heavy machinery, such as the Subject Pile Driver, may result in severe injuries or fatalities;

b. DEPCOM and Atlanta Farms employees, including Mr. Kennon, were working around defective and/or malfunctioning machinery, were not properly trained, instructed, or warned about the dangers of defective and/or malfunctioning machinery.

c. DEPCOM and Atlanta Farms, their workers, including Mr. Kennon, were working around defective and/or malfunctioning machinery were not provided with or using necessary safety guards, equipment, devices, tools, clothing and PPE to drives piles safely.

d. DEPCOM, Atlanta Farms, employees, including Mr. Kennon, were working around defective and/or malfunctioning machinery without taking any steps to ensure that all machinery was properly and adequately functioning.

71. At all relevant times, Mr. Kennon was instructed required, directed, assigned, requested, allowed, supervised, shown, told, condoned, expected, and/or encouraged by DEPCOM and Atlanta Farms by and through its owners/members, managers, supervisors, foreman, trainer(s), agent(s), and/or other personnel who had the right to direct and control Mr. Kennon's work to:

a. Encounter an extremely and unreasonably dangerous process, procedure, instrumentality or condition, including without limitation, working around defective and/or malfunctioning heavy machinery, without the necessary safety guards, equipment, tools, devices, training, instruction, warning and

supervision;

b. Perform work activities that exposed Mr. Kennon to unreasonably dangerous, unsafe and hazardous conditions, materials, substances, equipment and tools without the protection of proper and required safety guards, equipment, tools, devices, training, instruction, warning and supervision;

c. Work with, work near, or work around defective and/or malfunctioning heavy machinery, without proper, required, and adequate safety guards, equipment, tools, devices, training, instruction, warning and supervision;

72. One or more of these work activities and work areas were extremely unreasonably dangers and hazardous because of one or more of the following reasons:

a. Mr. Kennon was exposed to unreasonably dangerous, unsafe and hazardous procedures, instrumentalities, conditions, materials, substances, and/or equipment without the protection of proper and required safety guards, equipment, tools, and devices;

b. Mr. Kennon was exposed to unreasonably dangerous, unsafe and hazardous procedures, instrumentalities, conditions, materials, substances, and/or equipment without the protection of proper and required training, instruction, guidance, warning and supervision;

c. DEPCOM and Atlanta Farms deliberately misrepresented the nature or safety of the unreasonably dangerous, unsafe, and hazardous conditions, materials, substances, or equipment that Mr. Kennon was exposed to;

d. DEPCOM and Atlanta Farms deliberately misrepresented the necessity of equipment and training needed to safely work with or in proximity to such unreasonably dangerous, unsafe, and hazardous conditions, materials, substances, or equipment that Mr. Kennon was exposed to;

e. Mr. Kennon was not provided proper and adequate training, instruction, supervision or warning in recognition and avoidance of unsafe conditions and practices;

f. DEPCOM and Atlanta Farms failed to properly initiate and maintain a program of frequent and regular inspections, assessments, measurement, analysis and monitoring of the job site, workers, job tasks, work conditions, work materials, tools and equipment; and/or

g. Safety policies, practices or conditions that would have safeguarded Mr. Kennon were not instituted, followed or enforced.

h. DEPCOM and Atlanta Farms failed to ensure that Subject Pile Driver with which Mr. Kennon was required to work was in proper working order prior to the start of the project.

73. DEPCOM and Atlanta Farms also deliberately misrepresented: (a) the nature or safety of the unreasonably dangerous, unsafe, and hazardous conditions, materials, substances, or equipment that he was exposed to; and/or (b) the necessity of equipment and training needed to safely work with or in proximity to such unreasonably dangerous, unsafe, and hazardous conditions, materials, substances, or equipment that he was exposed to in light of DEPCOM, Atlanta Farms, 's failure to ensure that Worksite equipment was in proper working order.

74. DEPCOM and Atlanta Farms knowingly or deliberately removed, failed to provide and/or failed to instruct, require and enforce the use of proper and required safety guards, equipment, tools, and/or devices that would have prevented or greatly minimized the hazards that Mr. Kennon was exposed to on March 23, 2023 and would have prevented or greatly minimized Mr. Kennon's injuries, harms, losses and damages described more fully in Count One.

75. As Mr. Kennon was performing his work as he had been instructed, required, directed, assigned, requested, allowed, supervised, shown, told, condoned, expected, and/or encouraged to do, he sustained the injuries as described more fully in Count One.

76. DEPCOM and Atlanta farms 1acted with deliberate intent by, among other things, directing, requiring, instructing, assigning, expecting, allowing, condoning, ratifying and/or encouraging its employees, including Mr. Kennon, to encounter or be subjected to one or more of the items listed in Count Three.

77. 2As a direct and proximate result of DEPCOM and Atlanta Farms's aforesaid actions, omissions and/or intent, Mr. Kennon suffered the injuries and sustained the damages, harm and losses as more fully described in Count One.

78. DEPCOM and Atlanta Farms are individually and/or jointly and severally liable for Mr. Kennon's injuries and damages.

79. **Count Four**

80. Plaintiff adopts and incorporates herein by reference all claims, counts, allegations and averments contained in the Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

81. DEPCOM supplied the defective Subject Pile Driver to Ridgeline. The defective Subject Pile Driver caused Plaintiff's injuries.

82. DEPCOM was in the course of business and supplied the Subject Pile Driver that injured Mr. Kennon.

83. Under OPLA, a product liability claim may be asserted against the supplier of a product, which is defined as a "person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;" or a "person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm." Ohio Rev. Code § 2307.71.

84. DEPCOM as the supplier of the Subject Pile Driver is liable for defects in the Subject Pile Driver. As a direct and proximate result of the defects, Mr. Kennon suffered and sustained severe, debilitating personal injury and bodily damage; endured considerable physical pain and suffering, and mental and emotional anguish; incurred significant medical and hospital and related expenses; lost wages, earning capacity, and suffered other economic and non-economic injuries, all of which the above named Defendant is liable for.

85. As a further direct and proximate result of the defects, Mr. Kennon required and

continues to require medical care and treatment for which Mr. Kennon has incurred and will continue to incur expenses for the evaluation, diagnosis, care and treatment of his injuries, all of which the above-named Defendant is liable for.

86. As a further direct and proximate result of the defects, Mr. Kennon suffered and will continue to suffer a loss of income and earning potential and capacity into the future, all of which the above-named Defendant is liable for.

87. As a further direct and proximate result of the defects, Mr. Kennon will continue to suffer extreme pain and mental anguish, and he will continue to incur medical expenses as a direct consequence thereof.

88. The aforesaid defects demonstrate a conscious, reckless and/or flagrant disregard for the rights and safety of another person, including Mr. Kennon, which has a great probability of causing substantial harm, thereby also entitling Mr. Kennon to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment as follows:

A. Judgment against Defendants DEPCOM, Vermeer, and Atlanta Farms, jointly and/or severally, in an amount in excess of Twenty-Five Thousand Dollars (>$25,000.00) for compensatory damages.

B. Judgment against Defendants DEPCOM, Vermeer, Atlanta Farms, jointly and/or severally, in an amount in excess of Twenty-Five Thousand Dollars (>$25,000.00) for punitive damages.

C. Attorneys' fees and court costs plus interest at the legal rate.

E. Pre-judgment interest and post-judgement interest.

F. Any other relief deemed fair, just, or equitable by the Court.

**Jury Demand**

Pursuant to Fed. Civ. R. 38(b), Plaintiff demands a trial by jury.

Signatures:

By: */s/ Ryan T. Wagner*

Scott P. Armstrong
Ryan T. Wagner
McKinsey M. Warman
*Admitted Pro Hac Vice*
ARMSTRONG LEE & BAKER LLP
2800 N. Loop W., Suite 900
Houston, TX 77092
Phone (832) 709-1124
Fax (832) 709-1125
sarmstrong@armstronglee.com
rwagner@armstronglee.com
mwarman@armstronglee.com

-and-

Romney Cullers (0053668)
David W. Skall (0068740)
THE BECKER LAW FIRM
1111 Superior Avenue, East – Suite 400
Cleveland, Ohio 44114
Phone (440) 323-7070
Fax (440) 323-1879
rcullers@beckerlawlpa.com
dskall@beckerlawlpa.com

***Attorneys for Plaintiff Earl Kennon***

## CERTIFICATE OF SERVICE

I hereby certify Plaintiff's Second Amended Complaint was filed electronically with the Court and notice sent to all parties by the Court's electronic filing system or as well as via email as set forth below on September 17, 2026:

Jennifer L. Seme
RAWLE & HENDERSON LLP
The Henry W. Oliver Building
535 Smithfield Street, Suite 1000
Pittsburgh, PA 15222
jseme@rawle.com

-and-

Melissa Stull
Ike Messmore
SOULE & STULL LLC
7201 Metro Blvd Suite 200,
Edina, MN 55439
mstull@soulestull.com
imessmore@soulestull.com
***Attorneys for Defendant Vermeer Manufacturing Company***

Anthony C. Sallah, Esquire
Jeff A. Bartolozzi, Esquire
Paul N. Garringer, Esquire
BARNES & THORNBURG LLP
171 Monroe Avenue N.W. Suite 1000
Grand Rapids, MI 49503
Jeff.Bartolozzi@btlaw.com
Paul.Garinger@btlaw.com
Anthony.Sallah@@btlaw.com
***Attorney for Defendant***
***DEPCOM Power, Inc.***

J. Thomas Nocar, Esquire
65 East State Street, Suite 2500
Columbus, Ohio 43215
tnocar@nocarconstruction.law
***Attorney for Defendant***
***Atlanta Farms Solar Project, LLC***

*/s/ Ryan T. Wagner*
Ryan T. Wagner